IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-01876-RBJ-KLM

DONOVAN CRAIG MATTHEWS,

     Applicant,

v.

BOBBY BONNER, Warden, and
JOHN SUTHERS, the Attorney General of the State of Colorado,

     Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

     Applicant, Donovan Craig Matthews, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who was incarcerated at the Kit Carson Correctional Center in Burlington, Colorado, when he initiated the instant action.   He since has informed the Court that he is incarcerated at the Fremont Correctional Facility in Cañon City, Colorado.   Mr. Matthews, acting *pro se*, has filed a second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 14) challenging the validity of his conviction in Adams County, Colorado, district court Case No. 07CR1097.   He has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

## I.   Federal Court Proceedings

     In an order entered on December 4, 2013, Magistrate Judge Boyd N. Boland directed Respondents to file a pre-answer response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state

court remedies under 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either or both of those affirmative defenses in this action.   On January 21, 2014, after being granted an extension of time, Respondents filed their pre-answer response (ECF No. 22).   Mr. Matthews did not file a reply to the pre-answer response, although he was provided with the opportunity to do so.

On May 5, 2014, the Court entered an order of partial dismissal and for an answer (ECF No. 25) and an order for the state court record (ECF No. 26).   The May 5 partial dismissal order dismissed claim 3 as procedurally defaulted and directed Respondents, within thirty days of the filing of the state court record, to file an answer that fully addressed the merits of exhausted claims 1, 2, 4, 5, and 6.   The partial dismissal order allowed Mr. Matthews thirty days from the filing of the answer to file a reply, if he desired.

On May 9, 2014, the state court record (ECF No. 28) was filed.   On June 4, 2014, Respondents filed their answer (ECF No. 29).   On June 30, 2014, Mr. Matthews submitted a traverse (ECF No. 30).

## II.   State Court Proceedings

Mr. Matthews was convicted by a jury in Adams County District Court Case No. 07CR1097 of first-degree assault (causing serious bodily injury with a deadly weapon), two counts of second-degree assault (causing bodily injury with a deadly weapon), third-degree assault, and illegal possession of a weapon by a prior offender.   ECF No. 22, ex. D (*People v. Matthews*, No. 08CA0904 (Colo. Ct. App. Sept. 16, 2010) (unpublished)) at 3.   The trial court merged the second- and third-degree assault convictions into the first-degree assault conviction, and imposed concurrent prison

2

sentences of twenty-six years for the assault conviction and one year for the illegal weapon conviction.   ECF No. 22, ex. D at 3-4.

Applicant appealed directly to the Colorado Court of Appeals, which provided the following statement of facts:

> On April 7, 2007, defendant's uncle, Danny Moore, called police to report a domestic disturbance between defendant and the victim, C.M.   After hearing noises coming from the basement, Moore observed that when C.M. walked upstairs from the basement she was covered in blood.   He thought she had been beaten.   When the police arrived at the house, Moore directed them to the basement where they found defendant and C.M.   C.M.'s face was covered in blood and her hair was disheveled.   The room in which the two were found also contained fresh blood stains, including blood on the handrail, walls, and mattress, which came from C.M.'s injuries.
>
> Police talked to defendant and C.M. in an effort to determine why C.M. was bleeding.   Both had been drinking and provided inconsistent explanation for C.M.'s injuries.   They denied that defendant had caused C.M.'s injuries and maintained that C.M. sustained her injuries and other recent injuries from a series of falls.
>
> The People charged defendant with (1) first degree assault (causing serious bodily injury with a deadly weapon), (2) two counts of second degree assault (causing bodily injury with a deadly weapon), (3) third degree assault, and (4) illegal possession of a weapon by a prior offender. These charges were based on specific allegations that defendant hit C.M. with a baseball bat, punched her in the leg while wearing brass knuckles, cut her head, and bruised her back, between December 21, 2006, and April 7, 2007.
>
> At trial, C.M.'s family members and a co-worker testified that during this time period, C.M. told them that defendant was beating her.   Moore testified that defendant told him he was beating C.M. because she owed him for sending him to jail. These witnesses testified to C.M.'s numerous bruises and cuts on her face and that they had seen that C.M. had a broken arm.   These injuries occurred only after December 21, 2006, when defendant and C.M. were living together following his release from jail.

3

ECF No. 22, ex. D at 2-3.

On September 16, 2010, the Colorado Court of Appeals affirmed.   ECF No. 22, ex. D.   On January 18, 2011, the Colorado Supreme Court denied certiorari review. ECF No. 22, ex. F.   On June 2, 2011, Mr. Matthews filed a motion for sentence reconsideration, which the trial court denied the same day.   ECF No. 22, ex. A (state court register of actions) at 8.   Applicant did not appeal.

On June 17, 2011, Mr. Matthews filed a motion for postconviction relief.   ECF No. 22, ex. A at 8.   On September 22, 2011, the trial court denied the motion.   ECF No. 22, ex. A at 8.   On August 23, 2012, the Colorado Court of Appeals affirmed. ECF No. 22, ex. H (*People v. Matthews*, No. 11CA2269 (Colo. Ct. App. Aug. 23, 2012) (unpublished)).   On June 24, 2013, the Colorado Supreme Court denied certiorari review.   ECF No. 22, ex. J.

### III.   Standard of Review

The Court must construe liberally the second amended application and other papers filed by Mr. Matthews because he is not represented by an attorney.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court should not be an advocate for a *pro se* litigant.   *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Mr. Matthews bears the burden of proof under § 2254(d).   *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.   *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).   In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."   *Id.* at 784.   Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."   *Id.* at 784-85.   Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."   *Id.* at 784.   In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."   *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).   Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."   *Id.* at 1178.   "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."   *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).   *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).   The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Matthews seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.   *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).   Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."   *Id.* at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.   Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if:   (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."   *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"   *Williams*, 529 U.S. at 405 (citation omitted).

6

> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts.   *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10.   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather that application must also be unreasonable."   *Id.* at 411.   "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."   *Maynard*, 468 F.3d at 671.   Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity.   The more
> general the rule, the more leeway courts have in reaching
> outcomes in case-by-case determinations.   [I]t is not an
> unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that
> has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).   In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."   *Id.*   In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."   *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

7

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. §

2254(d)(2).   *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant

state court decision was based on an unreasonable determination of the facts in light of

the evidence presented to the state court.   Pursuant to § 2254(e)(1), the Court must

presume that the state court's factual determinations are correct and Mr. Matthews

bears the burden of rebutting the presumption by clear and convincing evidence.   "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"   *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision

was contrary to, or involved an unreasonable application of, clearly established federal

law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).   "Unless the error is a

structural defect in the trial that defies harmless-error analysis, [the Court] must apply

the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*;

*see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must

8

conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).   Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.   *Brecht*, 507 U.S. at 637.   "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."   *O'Neal*, 513 U.S. at 435.   The Court make this harmless error determination based upon a review of the entire state court record.   *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.   *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.   Merits of Applicant's Remaining Claims

The Court now will address the merits of Mr. Matthews' remaining exhausted claims.   Retaining the numbering in the second amended application, the remaining claims are:

> (1)   The admission of other-acts evidence violated Applicant's right to a fair trial.   ECF No. 14 at 12.
>
> (2)   The admission of photographs of his prior acts violated his right to a fair trial.   *Id.*
>
> (4)   The admission of his involuntary statements violated his right to a fair trial.   *Id.* at 13.

9

(5)     The admission of testimony not based on personal knowledge violated his right to a fair trial.   *Id.* at 14.

(6)     The trial court's denial of his motion to dismiss the public defender violated his right to the effective assistance of counsel.   *Id.*

## A.   Claim 1

In claim 1, Mr. Matthews contends the admission of other-acts evidence violated his right to a fair trial.   ECF No. 14 at 12.

The admission of evidence violates due process only when it denies a defendant fundamental fairness.   *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair).   The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."   *Dowling v. United States*, 493 U.S. 342, 352 (1990) (citation omitted).   Furthermore, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint."   *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted).   The Court's "[i]nquiry into fundamental fairness requires examination of the entire proceedings."   *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

Generally, federal habeas corpus relief does not lie to review state-law questions about the admissibility of evidence.   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).   In *Estelle*, the Supreme Court specifically declined to hold that the admission of prior-acts evidence violated due process, thus warranting habeas relief.   *See id.* at 75; *see also United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998).   The Supreme Court stated in a

10

footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of "'prior crimes'" evidence to show propensity to commit a charged crime. *Estelle*, 502 U.S. at 75 n.5; *see also Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair, regardless of whether the evidence at issue was properly admitted pursuant to state law); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served, and recognizing that the Supreme Court is not "a rule-making organ for the promulgation of state rules of criminal procedure" and that "none of the specific provisions of the Constitution ordains this Court with such authority.")

Because there is no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence in the form of other bad-acts evidence, *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the admission of prior bad-acts evidence cannot be contrary to clearly established Supreme Court precedent. *Rath v. Attorney Gen. of Colo.*, No. 06-cv-00419-WYD, 2008 WL 1930633, at *6 (D. Colo. 2008), *appeal dismissed*, 290 F. App'x 185 (10th Cir. 2008).

Mr. Matthews can prevail only if the trial court's admission of the other-acts evidence rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *See Estelle*, 502 U.S. at 67-68; *see also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001). A federal habeas court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of

such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denied defendant due process of law." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other grounds by Sawyer v. Smith*, 497 U.S. 227 (1990).

The Colorado Court of Appeals disagreed that the trial court erred in admitting evidence of Mr. Matthews' prior violent acts against the victim:

> The prosecutor introduced evidence that, in December 2005, defendant cut C.M.'s head when he hit her with a hairbrush; hit C.M. in the head with his fists and knees; and pulled her off a couch by her hair.   C.M. had two black eyes, was bleeding from the back of her head, and had a bump on her forehead. Defendant was taken into custody but the charges against him were dismissed and he was released on March 22, 2006.
>
> The prosecutor also introduced evidence that, one week later, defendant and C.M. were heard arguing and C.M. was heard whimpering.   C.M. had a 1.5 inch laceration above her right eye, which was swollen shut, and two swollen lips. As a result, police arrested defendant and he ultimately pleaded guilty to misdemeanor acts of domestic violence against C.M., for which he received and served a jail sentence.
>
> ### A.   Standard of Review
>
> We review admission of other act evidence for an abuse of discretion.   *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).
>
> ### B.   Law
>
> Under CRE 404(b), a defendant's prior act cannot be admitted to prove the character of the defendant to show that he or she acted in conformity with that character on a particular occasion, but it can be admitted for other limited purposes if the trial court has determined that the prior act occurred, *People v. Garner*, 806 P.2d 366, 373 (Colo. 1991), and that the evidence satisfies the four-prong test set forth in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).   *See People v. Rath*, 44 P.3d 1033, 1038-39 (Colo. 2002).

*Spoto* requires that the prior act evidence (1) relate to a material fact; (2) be logically relevant; (3) have logical relevance independent of an intermediate inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) have probative value that is not substantially outweighed by the danger of unfair prejudice.   *Spoto*, 795 P.2d at 1318.

Under section 18-6-801.5, C.R.S. 2010, evidence of similar transactions of domestic violence is likewise admissible for appropriate purposes, if its probative value is not substantially outweighed by the danger of unfair prejudice.

## C. Analysis

Defendant first contends that the court erroneously relied on section 18-6-801.5 to admit evidence of his prior jail sentence because the statute only applies to domestic violence transactions.   We perceive no error.

The court here properly evaluated the admissibility of this evidence pursuant to CRE 404(b) and did not solely rely on the statute. The court concluded the evidence of the jail sentence was admissible to demonstrate motive and modus operandi, based on the prosecution's offer of proof that defendant assaulted C.M. to retaliate against her for causing him to go to jail and his modus operandi of beating C.M. when he had the opportunity to do so following his arrests. These purposes were proper under these circumstances.

We also reject defendant's related contention that the trial court erred in admitting the December 2005 and March 2006 prior act evidence because (1) the prosecutor failed to state the purpose for which he sought to introduce the evidence, and (2) the court failed to find that (a) defendant was the person who committed the prior acts by a preponderance of the evidence; (b) the evidence was relevant independent of the inference that defendant is a person of bad character; or (c) any relevance was substantially outweighed by the danger of unfair prejudice.

Contrary to defendant's first contention, the record reflects that the prosecutor sought to introduce the prior acts to demonstrate defendant's motive and his modus operandi of retaliating against C.M.

13

> We are not persuaded by defendant's remaining contentions.   The court noted defendant was convicted of the 2006 assault against C.M., and therefore determined that defendant committed the act.   We conclude that any error in the court's failure to find by a preponderance of the evidence that defendant committed the 2005 acts was harmless, because defendant admitted at trial that he had hit C.M. in 2005, as alleged.
>
> The record also belies defendant's contention that the court did not find the evidence had relevance independent of its tendency to show his bad character.   The court specifically found, "I don't believe that this is simply character or propensity evidence.   I think that it does in fact, show a plan or a scheme or a design or modus operandi; the intent of the defendant."
>
> Finally, we acknowledge the court did not expressly balance the probative and prejudicial nature of the prior act evidence, but conclude that it did so implicitly by admitting the evidence.   *See People v. Copeland*, 976 P.2d 334, 337 (Colo. App. 1998) ("Having admitted the evidence, the trial court implicitly found that its probative value was not substantially outweighed by the danger of unfair prejudice."), *aff'd*, 2 P.3d 1283 (Colo. 2000).
>
> Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence of the 2005 and 2006 domestic violence incidents.

ECF No. 22, ex. D at 4-9.

The similarity between Mr. Matthews' prior acts of violence against the victim and the violent acts of which he was accused here was relevant because his defense at trial was that he did not assault his wife, C.M.   *See, e.g.*, trial tr., 18, Jan. 9, 2008; trial tr., 119-120, Jan 10, 2008.

The trial court gave a limiting instruction to the jury multiple times throughout the trial concerning the reasons for introducing evidence of prior violent acts.   On direct examination, Mr. Matthews' uncle, Danny Moore, testified that Mr. Matthews told him he hit the victim with brass knuckles and she deserved to be "mistreated" because she got

him thrown in jail for assaulting her the year before.   ECF No. 28, trial tr., 52, Jan. 9,

2008.   The trial court instructed the jury that "I will allow that last statement as to the

reason for mistreating her; namely, that he had been thrown in jail the year before. I'm

allowing that to be presented to the jury for the limited purpose of showing motive and

for no other purpose."   ECF No. 28, trial tr., 53, Jan 9, 2008.

On direct examination of the victim, C.M., the district attorney wanted to talk

about an event that occurred on March 29, 2006, and warned that he was about to "go

into an area of evidence that the Court has previously ruled would be admitted for a

limited purpose."   ECF No. 28, trial tr., 129, Jan. 9, 2008.   The trial court instructed the

jury he was going to allow "the next bit of testimony to come in regarding the prior

alleged incident.   It is being allowed in for a limited purpose, to show a plan, scheme,

design, intent, or lack of mistake.   It can be used by the jury for that purpose and that

purpose only."   ECF No. 28, trial tr., 129-130, Jan. 9, 2008.   The court reminded the

jury that Mr. Matthews was charged with offenses which were alleged to have occurred

between December 21, 2006, and April 2007; he was being tried for those charges; and

the testimony concerning the prior alleged incident "is being admitted for a limited

purpose and that limited purpose only."   ECF No. 28, trial tr., 130, Jan. 9, 2008.

Again during C.M.'s direct examination, before the district attorney asked her

about an event that occurred on December 7, 2005, the trial court gave the jury "the

same cautionary remark that I did before."   ECF No. 28, trial tr., 134-135, Jan. 9, 2008.

> Again, this is evidence of another alleged incident which the
> Court is admitting for the limited purpose of showing plan or
> scheme or design, identification, modus operandi, lack of
> mistake.   It can be used by the jury as it relates to those
> issues, and those issues only.   Again, the Defendant is
> charged with the events which are alleged to have occurred
> between the 21st of December 2006 and April of 2007.

> Can only be tried on those matters and for no other matter.

ECF No. 28, trial tr., 135, Jan. 9, 2008.

Before the direct examination of Mark Zamora, a prosecution witness who

testified about 2006 interactions between Mr. Matthews and C.M., the trial court stated:

> And again, I'm going to give the jury the same advisal
> that I gave to you on several other occasions.
>
> My understanding is that the evidence that will be attempted
> to be elicited from this witness, deals with events, other than
> the incident before the Court today, dealing with prior
> alleged assaults.   The Court, again, is allowing this for a
> limited purpose of showing plan, or scheme or design or
> modus operandi, identity of the individual, lack of mistake,
> and for those purposes only.
>
> Again, the Defendant may be tried only for the events
> alleged to have occurred between December the 21st of
> 2007 and April 2007 and for no other matters.

ECF No. 28, trial tr., 40, Jan. 10, 2008.

Before Jeffrey Stovall, a police officer for the Westminster Police Department,

testified on direct examination about a 2006 domestic violence incident he investigated

concerning Mr. Matthews and C.M., the trial court again stated:

> Again, I'm going to go through the advisal with the jury.
> Again, my anticipation is that this witness is going to be
> testifying to incidents other than the charged incident in this
> matter.   Again, that testimony is being allowed for a limited
> purpose of showing plan or scheme, or design, modus
> operandi, identity or lack of mistake and for that limited
> purpose only.   Again, the Defendant is entitled to be tried
> only on matters before the Court which are alleged to have
> occurred between December of 2006 and April of 2007 and
> on no other matters.

ECF No. 28, trial tr., 49-50, Jan. 10, 2008.

It is clear from the state record that, because Mr. Matthews disputed assaulting

C.M., evidence of his similar acts of domestic violence was sufficiently probative.   The state record shows that the trial court repeatedly instructed the jury to consider the other-acts evidence only for the specified, limited purpose of showing a common plan, scheme or design, modus operandi, motive, or intent, and for no other purpose.   The probative value of the prior acts, in light of the trial court's limiting instruction, lessened any potential for unfair prejudice.   Although the trial court did not expressly balance the probative value of the evidence against the danger of unfair prejudice, the state appeals court concluded that it did so implicitly by admitting the evidence.

The Court does not find that the probative value of the prior-acts evidence was outweighed substantially by any unfair prejudice.   The evidence cannot be described as "so unduly prejudicial that it render[ed] the trial fundamentally unfair."   *Payne*, 501 U.S. at 825.   Having decided as such, the Court does not find that having the jury consider the other-acts evidence for a limited, specified purpose rendered the trial as a whole fundamentally unfair as to constitute a denial of federal constitutional rights. Therefore, this Court finds that the state appellate court's decision was not contrary to clearly established federal law.   Claim 1 will be dismissed as meritless.

## B.   Claim 2

In his second claim, Mr. Matthews contends the admission of photographs of his prior acts violated his right to a fair trial.   ECF No. 14 at 12.

As previously stated, the admission of evidence violates due process only when it denies a defendant fundamental fairness.   *Payne*, 501 U.S. at 825 (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair); *see also Ediger v. Scott*, 28 F. App'x 882, 885 (10th Cir. 2001) (citing *Martin v.*

*Kaiser*, 907 F.2d 931, 934 (10th Cir.1990) ("[E]rrors in the admissibility of evidence are

not grounds for habeas corpus relief absent fundamental unfairness so as to constitute

a denial of due process of law.")).   The Supreme Court has "defined the category of

infractions that violate 'fundamental fairness' very narrowly."   *Dowling*, 493 U.S. at 352.

Furthermore, "because a fundamental-fairness analysis is not subject to clearly

definable legal elements, when engaged in such an endeavor a federal court must

tread gingerly and exercise considerable self-restraint."   *Duckett*, 306 F.3d at 999

(internal quotation marks and citation omitted).   The Court's "[i]nquiry into fundamental

fairness requires examination of the entire proceedings."   *Le*, 311 F.3d at 1013.

Generally, federal habeas corpus relief does not lie to review state-law questions

about the admissibility of evidence.   *Estelle*, 502 U.S. at 67-68;   *Moore*, 254 F.3d at

1246. On habeas review, this Court will not disturb the state court's evidentiary rulings

unless the appellant demonstrates that the state court's error was "so grossly prejudicial

that it fatally infected the trial and denied the fundamental fairness that is the essence

of due process."   *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997); *see also*

*Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).   This assessment requires

examining both the reliability of the evidence and the significance it had at trial.   *Id.* at

1523.

In affirming the trial court's admission of the prior-acts photographs, the

Colorado Court of Appeals stated:

> At trial, defendant objected to admission of the photographs as
> irrelevant and prejudicial.   On appeal, however, defendant
> contends only that the photographs were prejudicial.   We perceive
> no unfair prejudice.
>
> The admissibility of photographs is within the sound discretion of
> the trial court, and its ruling on whether photographs are

18

unnecessarily gruesome, inflammatory, or otherwise prejudicial to the defendant will not be reversed unless the court abused its discretion.   CRE 403; *People v. Villalobos*, 159 P.3d 624, 631 (Colo. App. 2006) (no unfair prejudice in admission of morgue photograph showing the trajectory of a bullet through the victim's head).

In ruling that the photographs were admissible, the court explained,

> I don't see that any of them are unfair. They may be gruesome, they may be unpleasant, and they are, but it is what it is, and if these are the injuries that she suffered, then the jury has a right to know that, as it relates to the issue of whether or not the Defendant committed these crimes.
>
> And so for that reason the Court is not going to exclude any of those photographs . . . . I don't find any of those are unduly prejudicial to the Defendant.

Based on our review of the photographs, we conclude that the record supports the court's conclusion, and therefore that their admission did not constitute an abuse of discretion.

### B.   Authentication

Defendant contends the trial court erred by allowing the prosecution to admit photographs of C.M., which displayed her injuries from a prior incident of domestic violence, because the photographs were not authenticated.   We are not persuaded.

We review a court's determination that a proper foundation has been established for an abuse of discretion.   *People v. Crespie*, 155 P.3d 570, 573-74 (Colo. App. 2006).

C.M. testified that the pictures (1) were of her; (2) were taken by an officer after a trip to the hospital on March 29, 2006; (3) and did not appear to be doctored.   C.M.'s opinion as to whether the photographs fairly portrayed her injuries went to the weight they would be given by the jury, but did not affect whether the prosecutor established a sufficient foundation for admitting them. Accordingly, we perceive no abuse of discretion.

ECF No. 22, ex. D at 9-11.

At the pretrial conference, the trial court denied defense counsel's request to

exclude photographs of the victim's injuries from a prior incident, ECF No. 28, tr., 13-18, Jan. 4, 2008, finding as discussed in the state appeals court affirmance that the photographs may be "gruesome" and "unpleasant" but not "unduly prejudicial to the Defendant." ECF No. 28, tr., 18, Jan. 4, 2008.   During the victim's testimony at trial, after giving a limiting instruction for the jury to consider the other-acts evidence only for the limited purpose of showing a common plan, scheme or design and for no other purpose, the trial court allowed to be admitted into evidence photographs of the victim's injury from a prior alleged incident occurring on March 29, 2006.   ECF No. 28, trial tr., 130-132, Jan. 9, 2008.   After giving another limiting instruction during the victim's trial testimony, the court also allowed to be admitted into evidence a photograph of the victim's injury from a prior alleged incident occurring on December 7, 2005.   ECF No. 28, trial tr. 134-36, Jan. 9, 2008.

The Colorado Court of Appeals and the trial court found that the photographs were not unduly prejudicial to Mr. Matthews.   The Court does not find the state appeals court ruling contrary to or an unreasonable application of Supreme Court precedent.   In light of the trial court's limiting instruction, the admission of the photographs was not so unduly prejudicial as to render the proceedings against Mr. Matthews fundamentally unfair.   *See Jackson*, 143 F.3d at 1322.   Consequently, Mr. Matthews is not entitled to relief on this ground.   Claim 2 will be dismissed as without merit.

## C.   Claim 4

In his fourth claim, Mr. Matthews contends the admission of his involuntary statements violated his right to a fair trial.   ECF No. 14 at 13.   Specifically, he alleges that the waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), was not

made knowingly, intelligently, and voluntarily.

A defendant's waiver of his *Miranda* rights must be voluntary, knowing, and intelligent. *Miranda*, 384 U.S. at 444; *United States v. Curtis*, 344 F.3d 1057, 1066 (10th Cir. 2003). To be voluntary, the waiver must be the product of a free and deliberate choice and not intimidation, coercion, or deception. *Colorado v. Spring*, 479 U.S. 564, 573 (1987); *Curtis*, 344 F.3d at 1066. In addition, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *Spring*, 479 U.S. at 573; *Curtis*, 344 F.3d at 1066.

To determine whether a waiver was valid, a court must consider the totality of the circumstances. *Spring*, 479 U.S. at 573; *Curtis*, 344 F.3d at 1066. The degree to which a suspect may have been under the influence of alcohol is a factor to be considered in determining whether the waiver of his or her *Miranda* rights was voluntary. *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir. 1997). The test for voluntariness of the statement is whether the claimed impairment caused the defendant's will to be overborne. *Id.* A statement is involuntary if coercive police activity played a significant role in inducing the statement. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The question of whether a confession was voluntary is a mixed question of law and fact subject to review under § 2254(d)(1). *Trice v. Ward*, 196 F.3d 1151, 1169 (10th Cir. 1999) (citing *Miller v. Fenton*, 474 U.S. 104, 111-12 (1985)).

The Colorado Court of Appeals addressed Mr. Matthews' fourth claim as follows:

> Defendant contends the trial court erred in denying his motion to suppress statements he made to police because he did not knowingly and intelligently waive his *Miranda* rights due to his high level of intoxication. We disagree.

21

At the outset of a custodial interrogation, the police must issue a *Miranda* advisement to inform a suspect of his or her constitutional rights.   *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966).   Suspects can waive their rights upon receiving a proper *Miranda* advisement; however, in order to be valid, the waiver must be voluntary, knowing, and intelligent.   *Id.*   We review the validity of a *Miranda* waiver de novo. *People v. Clayton*, 207 P.3d 831, 835 (Colo. 2009).

When self-induced intoxication is involved, courts examine whether the suspect was so intoxicated that he or she could not have made a knowing and intelligent waiver.   *People v. Platt*, 81 P.3d 1060, 1066 (Colo. 2004).   "Intoxication will not invalidate an otherwise valid *Miranda* waiver if the suspect was capable of understanding the nature of his or her rights and the ramifications of waiving them."   *Id.*

An intoxicated suspect's competency should be determined by considering several factors, including whether (1) the defendant seemed oriented to his or her surroundings and situation; (2) the defendant's answers were responsive and appeared to be the product of a rational thought process; (3) the defendant was able to appreciate the seriousness of his or her predicament, including the possibility of being incarcerated; (4) the defendant had the foresight to attempt to deceive the police in hopes of avoiding prosecution; (5) the defendant expressed remorse for his or her actions; and (6) the defendant expressly stated that he or she understood his or her rights.   *Id.*

After hearing testimony from the officers who were present when defendant was arrested and given a *Miranda* advisement, the trial court found:

> [W]hile [defendant] was intoxicated, that . . . intoxication did not rise to the level of rendering the – either the waiver of his *Miranda* advisal or the subsequent statements as being involuntary.
>
> The waiver was a knowing waiver, the defendant having indicated to Officer Communal, when advised, that he understood his rights and was willing to speak to the office[r] and, in fact, at some point in time said: I have nothing to hide.

22

The court also found that the only time defendant was not coherent was when he "was visibly upset, which was not necessarily due to intoxication."

Like the trial court, we conclude the totality of the circumstances indicate defendant made a knowing and intelligent waiver of his *Miranda* rights.   The testifying officers acknowledged defendant appeared very intoxicated; however, they each testified that defendant understood them and responded appropriately to questioning.   Specifically, the arresting officer testified to the following:

> • Defendant "stated he understood his rights and wished to speak to [him] without the presence of [an] attorney."
>
> • Defendant answered his questions and gave appropriate responses.
>
> • During the booking process, defendant remained responsive to questions and appeared to understand what was going on around him.
>
> • When he asked defendant to sign a consent to search form, defendant read it over, signed it, and said, "Yeah. I'll sign it. I have nothing to hide."
>
> • Defendant "was incoherent as far as, you know, he'd be real talkative, then he'd be less talkative and tell us this one story and then a few seconds later change and tell us another story. To me that's incoherent because he's not staying on the same track of one story."

The criminalist who was dispatched to defendant's home and later led defendant through the booking process at the police department testified that defendant never indicated he did not understand what she was telling him or that he was confused.   The detective assigned to the case also testified that defendant seemed to understand and was responsive to the questions asked of him.

The testimony of these witnesses indicated that:   (1) defendant seemed oriented to his surroundings and situation; (2) he was responsive and rational; (3) his inconsistent explanations for the cause of the victim's

> injuries were indicative of having the foresight to attempt to deceive the police in hopes of avoiding prosecution; and (4) he expressly stated that he understood his rights. *See Platt*, 81 P.3d at 1066.
>
> Under the totality of these circumstances, we agree with the trial court's conclusion that defendant's *Miranda* waiver was both knowing and intelligent despite his apparent intoxication.

ECF No. 22, ex. D at 11-14.

The Court has reviewed carefully the state court record. At the hearing on the motion to suppress statements, Officer Communal testified that while Mr. Matthews was still in the basement of the residence where the incident occurred he verbally advised him of his *Miranda* rights, ECF No. 28, tr. 71, 75, and 78, Nov. 30, 2007, and that Mr. Matthews stated he understood his rights and wished to speak to Officer Communal without the presence of an attorney. ECF No. 28, tr. 72-74, Nov. 30, 2007. The officer observed that Mr. Matthews was intoxicated, i.e., smelled of alcohol, had red and watery eyes, and had slurred speech. ECF No. 28, tr. 73, Nov. 30, 2007. Mr. Matthews provided conflicting explanations for the victim's injuries, i.e., that she fell and hit her head at work, fell off the bus stop and hit her head, and hit her head on a nail on the wall in the basement of the residence. ECF No. 28, tr. 81, 101, Nov. 30, 2007. Applicant responded "again" when Officer Communal informed him that her nose was broken. ECF No. 28, tr. 82-83, Nov. 30, 2007.

Officer Communal also testified that when he was going through the booking process with Mr. Matthews, Applicant never lost consciousness, was responsive to his questions, never indicated he didn't understand any question, and appeared to understand what was going on around him. ECF No. 28, tr. 83-84, Nov. 30, 2007. He agreed to sign a consent to search the residence and basement where the incident

occurred.   ECF No. 28, tr. 84-85, 97, 99, Nov. 30, 2007.

Criminalist Angela Fisher testified that Mr. Matthews understood the need to take pictures of him and get his consent for buccal swabs, never indicated he did not understand what she was saying or that he was confused, and never lost consciousness when she was talking to him.   ECF No. 28, tr. 110, Nov. 30, 2007. Detective Nick Adams, the assigned lead investigator assigned to the case, also testified that Mr. Matthews appeared to understand and be responsive to the questions the officer asked.   ECF No. 28, tr. 52-53, Nov. 30, 2007.

In denying the motion to suppress statements, the trial court considered the totality of the circumstances and found that the *Miranda* warnings were adequate and sufficient; Mr. Matthews' waiver of his *Miranda* rights was knowing, intelligent, and voluntary; and, citing *Connelly*, found that Mr. Matthews' intoxication did not render his statements involuntary.   ECF No. 28, tr. 137-142, Nov. 30, 2007.   The state court's factual findings are entitled to a presumption of correctness under § 2254(e)(1).   Mr. Matthews fails to rebut the presumption by clear and convincing evidence.

The Court does not find the state appeals court's ruling that, under the totality of these circumstances the conclusion that Mr. Matthew's *Miranda* waiver was knowing, intelligent, and voluntary despite his apparent intoxication, to be contrary to or an unreasonable application of Supreme Court precedent.   Claim 4 will be dismissed as meritless.

### D.   Claim 5

As his fifth claim, Mr. Matthew contends the admission of testimony not based on personal knowledge violated his right to a fair trial.   ECF No. 14 at 14.   Specifically,

Mr. Matthews alleges that his right to a fair trial was violated by the trial court's error in admitting testimony by Danny Moore, i.e., "statements describing arguments he heard between [Mr. Matthews] and C.M. and describing C.M.'s visible injuries because they referred to prior act incidents."   ECF No. 22, ex. D. at 15.   Mr. Moore, the uncle of Mr. Matthews, called the police on April 7, 2007, to report the domestic disturbance between Mr. Matthews and the victim, who lived in the basement of Mr. Moore's house.

As stated above, the admission of evidence violates due process only when it denies a defendant fundamental fairness.   *Payne*, 501 U.S. at 825 (evidence violates due process only when it is so unduly prejudicial that it renders a trial fundamentally unfair).   The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."   *Dowling*, 493 U.S. at 352.   Furthermore, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint."   *Duckett*, 306 F.3d at 999 (internal quotation marks and citation omitted).   The Court's "[i]nquiry into fundamental fairness requires examination of the entire proceedings."   *Le*, 311 F.3d at 1013.   Generally, federal habeas corpus relief does not lie to review state-law questions about the admissibility of evidence.   *Estelle*, 502 U.S. at 67-68; *Moore*, 254 F.3d at 1246.

The state appeals court found that the incidents referred to by Mr. Moore were not prior acts because he described them as occurring between December 2006 and April 2007, "which is the time period that forming the basis of the charges" against Mr. Matthews.   ECF No. 22, ex. D. at 15.   Because Mr. Moore's statements did not describe prior acts, the Colorado Court of Appeals found that the state trial court "did

not commit error, much less plain error in admitting the statements."   ECF No. 22, ex. D at 15.

In addition, Mr. Matthews challenges the state trial court's admission of Mr. Moore's statements that "'I actually [didn't] see them beat up on each other, but, you know, I just saw the after [e]ffects, you know,'" ECF No. 22, ex. D at 16; *see also* ECF No. 28, trial tr. 50, Jan. 9, 2008, and that he heard their arguments which sounded, "'Just, you know, like people were getting hurt.'"   ECF No. 22, ex. D at 16; *see also* ECF No. 28, trial tr. 49, Jan. 9, 2008.   Mr. Moore also said he heard a "clanking that was 'like someone getting hit with something,'" ECF No. 22, ex. D at 16; *see also* ECF No. 28, trial tr. 51, Jan. 9, 2008, and when he saw the victim following that incident he thought, "'It looks like [Mr. Matthews] is beating up on C.M. again.'"   ECF No. 22, ex. D at 16; *see also* ECF No. 28, trial tr. 57, Jan. 9, 2008.

The state appeals court found that these statements of Mr. Moore were based on arguments he overheard between Mr. Matthews and the victim, as well as his observations of the victim's injuries, and were expressions of inferences a reasonable person would form on the basis of observed facts.   ECF No. 22, ex. D at 16.   The appeals court concluded their admission did not rise to the level of plain error and did not so undermine "the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction."   ECF No. 22, ex. D at 16-17.

Mr. Matthews also challenges the trial court's admission of testimony by Mr. Moore about a statement by the victim he overheard.   When the prosecution asked Mr. Moore about the time period between December 21, 2006, and April 7, 2007, and the arguments he overheard, Mr. Moore replied, "'You know, there was [sic] times we were

27

sitting on the couch, me and my wife would be sitting there with my mom watching t.v., and you would hear people – you would hear [C.M.], you know, downstairs, you know, oh, oh, you know, stop hitting me, you know.'"   ECF No. 22, ex. D at 17-18; *see also* ECF No. 28, trial tr. 53-54, Jan. 9, 2008.   The Colorado Court of Appeals also found no error in admitting C.M.'s statement as an excited utterance exception to the hearsay rule.   ECF No. 22, ex. D at 18.

The Court of Appeals determined that the evidence against Mr. Matthews was "overwhelming," ECF No. 22, ex. D at 17, based upon factual findings including (1) testimony from the victim's family members and coworker that the victim told them Mr. Matthews was beating her; (2) Mr. Matthews' admission to his uncle that he was beating the victim because she owed him for sending him to jail; (3) testimony regarding the victim's injuries, including bruises and cuts and a broken arm; and (4) the injuries occurred while Mr. Matthews and the victim were living together following his release from jail.   ECF No. 22, ex. D at 3; *see also* ECF No. 28, trial tr., 56-58, Jan. 10, 2008.

The Court has reviewed carefully the state court record.   The state court factual findings are supported by the testimony and entitled to a presumption of correctness under § 2254(e)(1).   Mr. Matthews fails to rebut the presumption by clear and convincing evidence.   The Court does not find the state court's ruling that the admission of the statements did not so undermine "the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction," ECF No. 22, ex. D at 16-17, to be contrary to Supreme Court precedent.   Claim 5 will be dismissed as without merit.

E.   Claim 6

As his sixth and final claim, Mr. Matthews alleges that the trial court's denial of his motion to dismiss his public defender violated his right to the effective assistance of counsel.   ECF No. 14 at 14.   He specifically alleges that he filed three motions to dismiss counsel and for the appointment of private counsel, but the trial court failed to inquire into the reasons for the conflict between Mr. Matthews and counsel.

"To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."   *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) (citation and internal quotation marks omitted).   "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney."   *Lott*, 310 at 1249. "[R]ather, there must be a total breakdown in communications."   *Id.*

The Supreme Court has declined to find a constitutional right to a meaningful relationship between an accused and his or her counsel.   *Morris v. Slappy*, 461 U.S. 1, 13-14 & n.6 (1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel.").   A conflict of interest entitles a defendant to new counsel only where there is "an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client."   *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) (citing *Mickens v. Taylor*, 535 U.S. 162, 164-65 (2002) (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case); *Wood v. Georgia*, 450 U.S. 261, 270-72 (1981) (suggesting a strong "*possibility* of a conflict of interest" when defendants were represented by a lawyer hired

29

by their employer (emphasis in original)); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)

("Since a possible conflict inheres in almost every instance of multiple representation, a

defendant who objects to multiple representation must have the opportunity to show

that potential conflicts impermissibly imperil his right to a fair trial"); and *Holloway v.*

*Arkansas*, 435 U.S. 475, 490 (1978) (noting "in a case of joint representation of

conflicting interests the evil–it bears repeating–is in what the advocate finds himself

compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea

negotiations and in the sentencing process" (emphasis in original)).   A defendant "must

show both an actual conflict of interest and an adverse effect even if the trial court

failed to inquire into a potential conflict about which it reasonably should have known."

*Mickens*, 535 U.S. at 165 (internal quotation marks and citation omitted).

On May 9, 2007, the date set for Mr. Matthews' preliminary hearing, ECF No. 22,

ex. A (state register of actions) at 15, defense counsel informed the trial court that Mr.

Matthews wanted different counsel because, as he stated, "evidently she doesn't want

to work with me."   ECF No. 28, tr., 2-3, May 9, 2007.   The trial court granted Mr.

Matthews' request for a continuance to hire new counsel.   ECF No. 28, tr., 3, May 9,

2007.   After the May 9 hearing Mr. Matthews filed three motions in state court.

The three motions were identical form motions stating that Mr. Matthews

"believe[d] he/she had not been fully informed of his/her rights and methods of practice

during his/her court proceedings and believe[d] additional information and discovery

[were] available and currently [were] not being pursued by current counsel"; and "fe[lt]

that additional and different defense methods [were] required and with such the

defendant and counsel [had] reached insurmountable differences."   ECF No. 28, R.

(titled "Matthews 07CR1097 TCR") at 17/pdf (portable document format) 20, 20/pdf 23, and 24/pdf 27.

In a letter accompanying the first form motion, Mr. Matthews maintained counsel had not discussed the case with him beyond informing him of the "charges and penalties."   ECF No. 28, R. at 18/pdf 21.   He also maintained there was a conflict of interest because counsel had not been "trying to help defend [him] at all."   ECF No. 28, R at 18/pdf 21.   In a letter accompanying the second motion, Mr. Matthews maintained counsel was "not willing to help [him] with [his] case" and was "not willing to properly defend [him] in this case because she is bias [sic]."   ECF No. 28, R at 21/pdf 24.   No letter accompanied the third motion.

At the next hearing held on June 6, 2007, the following discussion occurred between defense counsel and the trial court:

> THE COURT:   Could you bring me Mr. Matthews, please . . . 07-CR-1097?
>
> MS. QUINN:   Sarah Quinn from the Public Defender's Office on behalf of Mr. Matthews, who is present today in custody.   Your Honor, I did get the opportunity after the Court spoke with Mr. Matthews, to speak with him again on the side.   I'd seen him in custody yesterday as well.
>
> THE COURT:   Oh, okay.
>
> MS. QUINN:   Ah, I explained the process a little bit further to him and . . . and drew him a diagram of how this . . . this kind of works.
>
> THE COURT:   Okay.
>
> MS. QUINN:   After that, Mr. Matthews indicated to me that he wished to waive his preliminary hearing at this time . . . .
>
> THE COURT:   Okay.

> MS. QUINN:  . . . to keep negotiations with the District Attorney open and to pursue that avenue and see if we can, in fact, work something out.
>
> THE COURT:   Sure.
>
> MS. QUINN:   I advised him of that. I had him sign the form.
>
> THE COURT:   Okay.
>
> MS. QUINN:   . . . so he is going to waive his preliminary hearing.   We pre-cleared a date upstairs on July 11th for his arraignment.
>
> THE COURT: Okay.

ECF No. 28, tr., 2-3, June 6, 2007.

This portion of the transcript demonstrates that Mr. Matthews wanted counsel to continue to present him, i.e., to waive the preliminary hearing and continue negotiating a plea agreement with the prosecution.   The register of actions for the hearing of June 6, 2007, indicates that "Pd S Quinn Remains On Case."   ECF No. 22, ex. A at 14.   In addressing the June 6 hearing, the Colorado Court of Appeals found that Mr. Matthews "was present at the hearing, did not dispute this counsel's characterization that he no longer desired to seek substitute counsel, and directly addressed the court on other matters without referencing or reasserting a request for substitute counsel."   ECF No. 22, ex. D at 19-20.   Therefore, the state appeals court concluded that "defendant abandoned his request for substitute counsel, and therefore we disagree that further inquiry by the court was warranted."   ECF No. 22, ex. D at 20.

The Court presumes the state court's factual findings are correct and Mr. Matthews bears the burden of rebutting the presumption by clear and convincing evidence.   *See* 28 U.S.C. § 2254(e)(1).   He has not met this burden with sufficiently

specific, fact-based allegations challenging the factual findings made by the state court, including the finding that he abandoned his request for substitute counsel and, therefore, further inquiry into the nature of his conflict with counsel was unwarranted.

Moreover, none of the reasons he offers in his three motions constitutes the type of conflict of interest the Supreme Court has identified as entitling a defendant to new counsel.  "This case is thus in the *Morris v. Slappy* category."  *Plumlee*, 512 F.3d at 1211.  Mr. Matthews fails to demonstrate that the decision of the Colorado Court of Appeals rejecting claim 6 was contrary to clearly established federal law.  Claim 6 will be dismissed as meritless.

## V.   Conclusion

In summary, the Court finds that Mr. Matthews is not entitled to relief on any of his remaining claims.

Accordingly, it is

**ORDERED** that the second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 14) is denied, and the action is dismissed with prejudice.   It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.   It is

FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).   It is

FURTHER ORDERED any pending motions are denied as moot.

DATED December 16, 2014, at Denver, Colorado.

BY THE COURT:

R. BROOKE JACKSON
United States District Judge